## Case No. 13,074.

SMITH v. McLEAN et al.

[10 N. B. R. (1874) 260.] [2]

District Court, S. D. Mississippi.

BANKRUPTCY—CHATTEL MORTGAGE—PROCEEDS OF SALE—RIGHTS OF PURCHASER—PARTNERSHIP—PREFERENCE.

1. M. and C. were partners in trade, and on the dissolution of the firm, M. purchased of C. his interest in the business, giving his notes in payment, and executing a mortgage to secure the notes on the stock of merchandise and accounts of the firm. M. continued in business some time thereafter, and finally sold and transferred to C. the entire stock of goods then in his (M.'s) store. C. took possession of the stock and made sales on his own account. At the time of the sale M. was hopelessly insolvent. *Held*, that as the mortgage contained no

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reprinted by permission.]

provision by which the collections and proceeds of sales should be either applied to the purposes of the conveyance, to the payment of the debts to be secured, or indemnity to be provided, or by its reinvestment so as to augment the trust fund, the want of which is inconsistent with the alleged purpose of the conveyance, and therefore it is void upon its face.

[Cited in Re Foster, Case No. 4,964.]

2. The sale gave C. a preference over the other creditors and was therefore invalid: and C. knew of the insolvency of M. at the time of the transfer, therefore he must pay into court the value of the property, with interest from the time of the sale and transfer.

In equity.

HILL, District Judge. This is a petition in the nature of a bill in equity, filed by the complainant [J. J. Smith], as assignee in bankruptcy of said George P. McLean, against said McLean and Charles B. Clark, to set aside a sale of a stock of goods and other property alleged to have been made by McLean to Clark, in January, 1873, and to subject the value thereof to the payment of the debts of McLean under the bankrupt law [of 1867 (14 Stat. 517)], the goods and merchandise so sold having been disposed of by Clark or consumed by fire.

The pleadings and proofs upon which the questions for decision arise are voluminous, but need not be stated in detail, as the following facts, appearing therefrom, are all that need be stated:

After the close of the war, McLean, being an old merchant without means, and Clark a planter with a surplus cash capital, entered into a copartnership for the purpose of carrying on a commercial establishment at Rocky Springs, in this state, in which McLean was to give the business his personal attention, and Clark was to advance five thousand dollars as capital stock, and to share profits and divide losses equally. Under this agreement the business was commenced, and conducted in the firm name and style of George P. McLean & Co., until July, 1871, when an agreement for dissolution of copartnership was entered into between them, and McLean gave to Clark his note for thirteen thousand five hundred and ninety-nine dollars and eighty-nine cents, three thousand dollars being for the estimated profits due to Clark, and the remainder for the cash and cotton advanced to the firm, inclusive of the five thousand dollars, originally advanced as capital stock. In other words, it was a purchase by McLean of Clark of his interest in the business for the amount stated, the notes to secure which were made due and payable one day after date, and dated on the 14th day of August, 1871. That. to secure payment of this amount and to save Clark harmless against the payment of the indebtedness of said firm to their other creditors. then amounting to about ten thousand dollars, McLean executed a mortgage to Clark conveying to him all the stock of merchandise then on hand,

or to be thereafter received, also all the notes and accounts then due to him or to said firm, and all those to be thereafter acquired, also seven mules and one wagon. At the time of the dissolution of the partnership it was agreed between McLean and Clark that the business should be continued under the firm name and style of George P. McLean & Co. Notice of the dissolution was given in the local newspaper of the county, and posted at public places in the neighborhood, but there is not sufficient proof of notice to those formerly dealing with them, or in the cities where subsequent purchases were made. McLean remained in the possession of the property thus conveyed, and conducted the business as though no change had been made by the dissolution of the firm or conveyance of the property, until the 17th of January, 1873, when, by a private arrangement between McLean and Clark, the entire stock of goods, etc., estimated at twelve thousand one hundred and fifty-five dollars and fifty-six cents, was sold and transferred to Clark, who took possession of them as his own under said agreement, and continued to make sales of the same until some time thereafter, when the store-house with its contents was consumed by fire. At the time this transfer was made McLean reserved the debts due either the old firm or himself under the old firm name. The goods, etc., sold by McLean to Clark consisted principally of a stock of merchandise purchased by McLean, in the firm name, of merchants in New Orleans and St. Louis, in the fall of 1872. At the time of this sale McLean was unable to pay his mercantile debts as they fell due in the usual course of business; indeed, had no money to pay either Clark or his mercantile creditors, although the notes and accounts held by him amounted to some sixteen thousand dollars, as they are proved to have been of but little value, being upon persons destitute of means, and consisted of the accruing of bad debts from the commencement of the business. That McLean was then hopelessly insolvent, both legally and commercially, there can be no doubt.

Under this state of facts two questions are presented: First. Was the mortgage made upon the 14th of August, 1871, a valid conveyance as against the creditors of McLean? Second. If not, was the sale and transfer made on the 17th of January, 1873, a valid sale as against the creditors of McLean under the provisions of the bankrupt law?

It is insisted for complainant, representing the creditors, that both the mortgage and sale were void as against McLean's creditors, and by Clark that both were valid; that the mortgage was valid and embraced the entire property sold and transferred, and that the sale was in fact but a foreclosure of the mortgage, made by private arrangement, instead of by judicial proceedings. The first question to be considered is, was the mortgage void upon its face by means of its conditions? If not, was

it void in fact, by reason of the fraudulent intent of the parties? in other words, was it void in law or in fact? The stipulations and conditions contained in the mortgage are contradictory; it professes to be made to secure the prompt payment of the notes upon their maturity, which occurred upon the next day, or allowing days of grace, upon the fourth day thereafter. There is no power of sale given in the mortgage, but it is a conveyance, to become void upon prompt payment of the notes; and indemnity against liability upon the partnership debts, or failure of payment upon the maturity of the notes, authorized a foreclosure of the mortgage; or if paid, a failure to indemnify him against liability upon the partnership debts, authorized the same thing. Yet the conveyance embraced subsequent merchandise to be brought into the business, and subsequent credits to be acquired, evidently contemplating a continuance of the business for an indefinite period of time; as further evidence of this intention, it was agreed that McLean should carry on the business, in the same firm name, but for his own benefit; Clark permitted the business to be so carried on for about eighteen months, and until McLean's inability to continue his business, when he made the purchase. The intention of the parties as shown upon the face of the mortgage evidently was that McLean was to buy and sell and to collect the debts due and to have the entire control of the property and credits embraced in the mortgage, then in hands or afterwards to be acquired, until Clark should see proper to demand payment of his demands, the income and benefits in the meantime to be received by McLean. There is no stipulation in the mortgage that the collections or profits shall be applied to the payment of either the creditors of the old firm, or of that due to Clark, and nothing prohibiting McLean from, in the meantime, making any disposition of the funds received either from sales or collections as he might desire. Whilst it is true that, aside from the provisions of the bankrupt act, a debtor may prefer one creditor to another, yet a conveyance for that purpose by which a benefit is reserved by the vendor to himself is void as against creditors. This has been the well settled rule from Twyne's Case down to the present time Any condition in the conveyance inconsistent with the appropriation of the thing conveyed to the payment of the debt intended to be secured, or the indemnity intended to be provided, will render the conveyance void upon its face; this rule is so universally admitted, that reference to authorities or illustrations to support it is deemed unnecessary. Applying this rule to the stipulations and conditions in this mortgage, and it will be found difficult to sustain it as a valid conveyance, and especially so as to the after acquired property and credits.

It is true that it is now a settled rule that a railroad company may encumber by mortgage or other security after-acquired property, necessary to the running and operation of the road. It is for a reason that does not apply to the case now under consideration. The value of a railroad consists in the profits of operating it; the railway without machinery to operate it would be worthless; the railroad and its rolling stock, and all the property necessary to its successful operation are to a great extent one entirety; but not so with a mercantile establishment and its income. The merchandise is worth nothing aside from its sale. The receipts from the sales may or may not be reinvested in other purchases; the remaining stock may be sold without it. A crop to be planted and cultivated may be encumbered for means to produce it; such means becomes a part of it. The mortgage in this case contains no provisions by which the collections and proceeds of sales shall be either applied to the purposes of the conveyance, to the payment of the debts to be secured, or indemnity to be provided, or by its reinvestment, so as to augment the trust fund, the want of which is inconsistent with the alleged purpose of the conveyance, and renders it void upon its face. Again, the dissolution of the copartnership, and this conveyance, although bearing different dates, must be taken as but parts of the same transaction, one part of which was that the business was to be continued by McLean for his own benefit in the firm name of Geo. P. McLean & Co. What was the purpose of continuing in the old firm name, if it was not to hold out the inducement to those who might thereafter give credit that Clark was still a partner, and liable; if not, that some other than McLean was? If so, this was an intentional fraud upon subsequent creditors. Clark had a deep interest in enabling McLean to obtain credit, and thereby increase his security. The firm owed debts to the amount of ten thousand dollars, besides between thirteen and fifteen thousand dollars to him—in all about twenty-four thousand dollars; if, therefore, the after-acquired property inured to his security, the more the better. It is not to be presumed that any sane man, knowing that the moment he sold goods to McLean they became subject to this mortgage, would extend credit to McLean for their payment. It is true that both McLean and Clark testify that they intended no fraud, but they must be held as intending that which was the natural and almost unavoidable result of their act. Other reasons might be stated for holding this conveyance void, but it is presumed those stated are sufficient, and that this conveyance cannot aid the subsequent sale.

The remaining question is, was the sale and transfer of the stock of merchandise made on the 17th of January, 1873, void under the provisions of the bankrupt act? The sale was made in bulk and by wholesale, not in the usual course of business of a retail merchant. This, under the provisions of the bankrupt law rendered it prima facie void as to creditors, and threw upon the vendee the burden of

proof to show its fairness and validity. The testimony of both vendor and vendee is that it was a fair sale. and that no fraud or preference was intended; but whilst these men, from the testimony, bear a high character for truth and integrity, it nevertheless becomes the court to consider the whole transaction and' determine the validity of the sale, as tested by the provisions of the law. That McLean was then both legally insolvent, that is, had not sufficient property subject to execution to pay all his debts if sold under legal process, or commercially insolvent, that is, had not the means to pay off and discharge his commercial obligations as they became due in the ordinary course of business, cannot be doubted. The further question is, did Clark know that fact, or have cause to believe that it existed? he certainly had cause to believe, whether he did so or not, that McLean was not able to pay him his demands and continue his business. No other reason is given, or can truthfully be given, for the sale. Again, he must be held to have known, or to have inquired about that which an ordinarily sensible, prudent man, as he is shown to be, would have inquired into, being a subject in which he was so deeply interested. He claims to have had a mortgage upon the whole establishment, including the merchandise on hand and credits, not only for the payment of his demands, but from liability against the debts of the old firm. Such being the case, he must be held to have examined into its condition, and if he did so, to have known its insolvency; and if he did not, cannot avail himself of his ignorance to the injury of the creditors of McLean, who gave the credit in ignorance of his demand. It was the duty, and if not was the interest of Clark when the dissolution took place, to know the amount of indebtedness for which he was then liable. If he inquired he must have known it was a large amount for an establishment of that kind. When he purchased in January, 1873, he must have examined the stock, and observed that they were mostly new goods, and should have inquired whether or not they had been paid for; if he did he would have ascertained that they had not, and whilst he might have been informed that there were nominal debts due more than the amount of indebtedness, he must have known that most of them, if not worthless, would be difficult to collect. In other words, if he had done that which a man of ordinary prudence occupying his position, would have done, he must not only have had reasonable cause to believe, but must have known of the insolvency of McLean, and if he neglected to make this inquiry must suffer the consequences, or rather cannot be permitted to take advantage of his ignorance of that which it was both his duty and interest to know. This transfer divested McLean of his property subject to execution, of all his means which could immediately be converted into cash. His credits being of but little value could only be reached by the tedious, expensive, and uncertain process of garnishment. That this transfer gave Clark a preference over the other creditors of McLean there can be no doubt, and under all the facts, it is difficult to come to any other conclusion than that such preference, was intended. and the statements made to the contrary only to be reconciled by the belief upon the part of McLean and Clark that the mortgage was a lien upon the property sold.

The plain provision of the bankrupt law is, that when a debtor is insolvent and makes a payment of money, or a transfer of property to his creditors, in payment or as security for the debt due, and the creditor, at the time of its reception or transfer, knows, or has cause to know, that his debtor is insolvent, the payment or transfer is invalid, and the amount so paid, or the property transferred, or its value, must be returned for the benefit of all the creditors whose claims may be proven or admitted. It is equally well settled, that when the circumstances brought to the knowledge of the creditor, or those which his relation to the subject requires him to know, are such as would lead a prudent man to investigate, and which, if investigated, would communicate to him a knowledge of the insolvency of his debtor, he will be equally affected by it, whatever his knowledge or belief may have been.

Applying this rule to the facts in this case, it is clear that the transfer made by McLean to Clark, in payment of his indebtedness to him, was invalid; and that Clark must pay into the court the value of the property, with interest from the sale and transfer, to be distributed equally among his creditors.

The question as to whether Clark will now be permitted to prove his debt and share with the other creditors, is reserved.